CHAMBERS–BERING–QUINLAN CO. v. FARIES.

(Circuit Court, S. D. Illinois. August 24, 1896.)

PATENTS—VALIDITY AND INFRINGEMENT—WIRE-CHAIN MACHINES.

The Barnes patent, No. 230,604, for a machine for forming interlocking eyes in wires or wire chains for operating the seeding devices in check-row corn planters, held valid, and not anticipated, as to the fourth claim; and said claim held infringed by a machine containing the same elements, combined and operating in substantially the same way.

This was a suit in equity by the Chambers-Bering-Quinlan Company against Robert Faries for alleged infringement of a patent.

Bond, Adams, Pickard & Jackson, for plaintiff.

E. B. Stocking and Crea & Ewing, for defendant.

ALLEN, District Judge. This suit is brought to restrain infringement of the fourth claim of letters patent No. 230,604, granted to

Alden Barnes August 30, 1880, and relates to machinery for forming interlocking eyes in wires or wire chains for operating the seeding devices in check-row corn planters. Said fourth claim reads as follows:

"In combination with a stud, b, for holding the ends of the wire, a head, M, located above the stud. b, which may be rotated to force the wire around the stud and form interlocking eyes thereon, as and for the purpose specified."

In a former suit between the same parties this fourth claim, together with others of the same patent, was involved, and was held by this court to be valid, and to have been infringed. The opinion in the former case is found in 64 Fed. 587. The same defenses that were urged against the validity of the claim in that former case are again presented. What was said, therefore, in the former case as to the validity of the fourth claim applies with equal force in the present case, and need not be repeated. To be sure, the defendant's expert, in his evidence, considers another patent (No. 53,138) to Goodwin, which was not considered by him in his testimony in the prior case, and was not mentioned in the opinion. This patent was, however, set up in the answer in that suit. There is, however, nothing in that patent which would change the opinion heretofore rendered. It is not necessary to take up and analyze this Goodwin patent in detail. Indeed, it does not seem to have been seriously relied upon by defendant's expert. The device of this patent which is claimed to anticipate the fourth claim of the patent in suit is intended for use on a grain binder, and consists, in brief, of a head carrying two pairs of grasping jaws and other mechanism, so arranged that when the head is lowered the grasping jaws are raised and opened, and when the head is raised the jaws are lowered and closed. A central vertical rod, with a sharpened pin upon its lower end, extends through the head, and, in operation, is inserted into a bundle of grain. As was well said by Mr. Richards, the complainant's expert:

"The exhibit Goodwin patent shows and describes a slidable head, which moves upwardly and downwardly; but this head, as shown and described in the Goodwin patent, cannot be used to form interlocking eyes. There is no such function connected with it, or with its operation. All that this sliding head does, as shown in this patent, is to form hooks on the ends of a band of straw, and interengage them; and other apparatus is necessary to draw the end of these hooks towards the body portions, and thus make eyes of them. * * * The mode of operation of the Goodwin device is entirely different from the mode of operation of the interlinking eye-forming mechanism of the machine shown in the Barnes patent. The results performed by the two machines are different."

The Goodwin patent cannot be considered as anticipating the claim in suit.

The defense that this fourth claim is for an "inoperative combination" is reasserted with renewed vigor. In addition to the other authorities quoted in the former opinion, it is necessary only to refer to the case of Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, where the same point was urged. On page 302, 155 U. S., and page 124, 15 Sup. Ct., the court says:

"Admitting that additional elements are necessary to render the device operative, it does not necessarily follow that the omission of these elements

invalidates the claim, or that the precise elements described in the patent as rendering it operative must be read into the claim. If Steward were in fact the first to invent the pivotal extension of a butt adjuster, he is entitled to a patent therefor, though the infringer may make use of other means than those employed by him to operate it;" citing Loom Co. v. Higgins, 105 U. S. 580, 584.

Therefore, even if it be admitted, for the sake of the argument, that elements other than those named in the claim in suit are necessary to the complete operation of the machine in forming interlocking eyes, that fact does not render the claim invalid, and does not prevent defendant from infringing when using the elements of the claim, though he uses them in connection with other elements than those described in the specification of the patent in suit for the complete operation of the devices.

The patent in suit has also been found fault with on a number of minor points, which are too trivial to consider in detail. None of them in any way affect the operation of the devices described, or are of such a character as to impair the description of such devices. The specification describes an operative and valuable machine. It has, indeed, been urged with some vigor that a machine constructed like that of the patent would not operate, and cannot be made to operate, as described. This is answered by the fact that a machine made like the drawings of the patent in suit, and in accordance with the specification, was operated in the exact manner described in the patent, by Mr. Wilkinson, one of complainant's witnesses, and the wire so made was introduced in evidence. Moreover, the machine was so operated by counsel for complainant in the argument of the cause, and actual, merchantable, check-rower wire produced. It also appears that, upon old machines like this, wire was produced in quantities for commercial use. The claim in suit must therefore be held valid, and not anticipated by the prior art.

Coming to the question of infringement, the device of the defendant is slightly different from that in issue in the prior suit. In the device in suit the head, provided with downward projections on its lower surface, is centrally bored; and through the bore extends a pin which is so connected with other mechanism that as the head is forced down upon the wire section, and rotated, the pin is forced below the head, and forms a mandrel, located below the head when the head is in operative position, around which the ends of the wire sections are coiled to form interlocking eyes. The defendant's machine, therefore, has the stud, b, for holding the ends of the wire; also, the head, M. The head, M, is rotated to force the wire around the stud to form interlocking eyes thereon by means of the projections on the head engaging with the wire ends; and the head, M, is "located above the stud, b," as soon as the head is in operative position. Without going into details more fully, the defendant's machine contains all of the elements of the claim in suit, combined and operating in substantially the same manner.

Much stress has been laid upon the words of the claim, "located above the stud," and the fact that these words were put into the claim by amendment to avoid a reference. This point would have

weight if it were not for the fact that in the defendant's machine as soon as the head is in operative position it is "located above the stud." The defendant's expert says in his direct evidence that "the meaning intended to be conveyed by the words 'located above the stud,' in claim 4 of the Barnes patent, means that the head shall be separate from, and movable independent of, the stud." Now, this is exactly descriptive of the defendant's device. The rod of that machine, which performs, in the same way, the same functions as the stud, b, of the Barnes patent, is separate from, and movable independent of, the head. The change of construction in this respect must therefore be considered an attempted evasion of the patent. Inasmuch, therefore, as the defendant's machine contains the same elements as the claim in suit, combined and operating in substantially the same way, it must be held to infringe said claim. Let a decree be entered for the complainant, in accordance with the prayer of the bill.