## AMERICAN CHOCOLATE MACHINERY CO. v. HELMSTETTER.

(Circuit Court, S. D. New York.   March 14, 1904.)

1. PATENTS—INFRINGEMENT—MACHINE FOR COATING CONFECTIONERY.

The Holmes patent, No. 492,205, for a machine for coating confectionery, claim 1, covering a combination of a dipping mechanism with a jarring device for removing surplus coating from the drops, was not anticipated, and is entitled to a liberal construction as embodying the first successful automatic machine for coating cream cores with chocolate, and is infringed by the machine of the Weeks patent, No. 634,633.

2. SAME—CHOCOLATE DIPPING TRAY.

The Gousset patent, No. 526,968, for a chocolate dipper, claim 4, was not anticipated, and is valid; also *held* infringed.

3. SAME—CHOCOLATE COATING MACHINE.

The Walter patent, No. 533,974, for a chocolate dipping or coating machine, claim 1, *held* infringed.

In Equity.

Charles C. Gill, for complainant.

Hector T. Fenton, for defendant.

COXE, Circuit Judge.   This action is founded on three letters patent for improvements in the confectionery art.   They are as follows:  No. 492,205, granted February 21, 1893, to Daniel M. Holmes;  No. 526,968, granted October 2, 1894, to Cyprien Gousset and No. 533,974, granted February 12, 1895, to William Walter.

The complainant is a New York corporation engaged in the manufacture and sale of machinery for making chocolate confections and is the owner of the patents in controversy.   The defendant is engaged in making chocolate creams in the city of New York and, in such business, uses apparatus alleged to infringe.   Holmes seems to have been the first person to produce a successful automatic machine for coating cream cores with chocolate. The portion of the machine in controversy relates to mechanism whereby the cream cores are properly held in position, dipped in the chocolate solution, withdrawn therefrom and the surplus chocolate removed by means of a jarring action imparted to the holding frame or dipper.   The first claim of the Holmes patent, the only one involved, is as follows:

"In a machine of the character herein specified, the combination with the drop dipping mechanism, of a jarring device for removing surplus coating material from the drops, substantially as shown and described."

This combination contains two elements, first, a drop dipping mechanism, and, second, a jarring device for removing the surplus chocolate; both elements, of course, must be found in a machine for coating confectionery as described and shown.

The jarring device is thus referred to in the specification:

"As the dipping mechanism reaches its highest point, the finger is no longer held out of engagement with the ratchet, but, through the medium of the rod and its connections is released permitting the ratchet to strike it, and the hammers are caused to rapidly tap the upper portion of the connections to the drop holder, thus causing the jarring off of the surplus coating, and this jarring continues until the drops are nearly deposited upon the paper."

It consists of a succession of sharp jars or shocks imparted to the holding tray by hammers moving vertically, so that the surplus chocolate is removed without injuring or marring the symmetry of the drop.

There is nothing in the prior art requiring a limitation of the claim in any particular material to this controversy. The Stone patent, No. 371,990, for "improvements in holders and gages for paper cones while waterproofing them," is so obviously different in mechanism and purpose that it is unnecessary to discuss it. No one from a study of the Stone patent would know how to construct an automatic power chocolate machine. The only other prior patent is No. 485,326, granted to Holmes himself, for a hand machine designed to accomplish a result similar to that of the patent in suit. It is, however, a crude and clumsy device which never was and never can be used commercially. It is enough to say that the "jarring device" of the present patent is absent and no equivalent is shown therefor. The rollers which are described in the specifications as "assisting the removal of the surplus chocolate" do not remove the surplus from the cream drops, but only such drippings as may accumulate upon the rollers by gravity or otherwise. There is nothing in the mechanism of the first patent at all comparable to the mechanism of the combination of the first claim of the second patent.

The defendant seeks to avoid infringement by placing unnecessary limitations upon the claim. To paraphrase the language of the Supreme Court it may be said that "Holmes, having been the first person who succeeded in producing an automatic machine for coating chocolate cream drops is entitled to a liberal construction of the claims of his patent. He was not a mere improver upon a prior machine which was capable of accomplishing the same general result; in that case his claims would properly receive a narrower interpretation." Sewing Machine Co. v. Lancaster, 129 U. S. 263, 9 Sup. Ct. 299, 32 L. Ed. 715.

The defendant's machine is made under letters patent No. 634,633 granted to W. H. Weeks October 10, 1899. It is argued that the defendant's jarring frame is not the "jarring device" of the claim. It certainly is not the exact apparatus shown and described by Holmes but it accomplishes the same result in substantially the same way and only differs in nonessential details. The defendant's tray, filled with the candy cores, is detachably hung on hooks of the dropping mechanism which descends into the chocolate solution and then rises until its upward course is arrested by appropriate devices. The tray is then taken, manually, from the hooks and moved laterally upon guides to the jarring frame which is part of the same machine and is placed over a continuation of the vessel containing the solution. This frame is mounted upon rods, the lower ends of which rest upon ratchet wheels which are rotated from the main shaft and as the ends drop off the teeth of the ratchets, a jarring motion is imparted to the tray and the superfluous chocolate is shaken off. In both the complainant's and defendant's structures, the jarring motion is produced by ratchet wheels; in the former by causing hammers to tap the tray and in the latter by causing the tray to tap the hammers—for this is, in effect, what occurs when the

toothed wheels revolve, causing the tray to rise and fall with great rapidity. The two structures are clearly equivalents. There can be no doubt that the defendant has, in his machine, a drop dipping mechanism and a jarring device, and so infringes the claim in issue. It is true that for an instant the intervention of an attendant is necessary in placing the defendant's tray upon the jarring frame, but this frame and the dipping mechanism are, nevertheless, in combination. The machine is a unit. All its parts co-operate to produce the desired result. Forbush v. Cook, 2 Fish. Pat. Cas. 668, Fed. Cas. No. 4,931; Birdsall v. McDonald, 1 Ban. & A. 165, Fed. Cas. No. 1,434; Hoffman v. Young (C. C.) 2 Fed. 74.

Gousset's invention is an exceedingly simple one and relates solely to improvements in that class of devices which are used for dipping cream drops into a chocolate solution so as to give them the desired exterior chocolate coating. The fourth claim, only, is involved and it sufficiently described the invention, as follows:

"A chocolate dipper comprising an open frame, a series of parallel wires crossing the frame, and secured at their ends thereto, and a series of cups formed of a series of serpentine or zig-zag wires crossing the frame and resting at their upward bends upon said cross wires, and the second series of serpentine or zig-zag wires at right angles to the first series and having their downward bends crossing the downward bends of the said first series substantially as described."

It required ingenuity and skill to construct a basket which would hold the creams while being coated and release them afterwards without being disfigured. The basket patented in Germany to Reiche shows an entirely different construction, which is obvious on comparison, and nothing else in the art approaches the patented device as closely as does the Reiche structure.

The defendant's tray is almost an exact reproduction of the Gousset device, the only difference being that the defendant has introduced additional heavy wires extending longitudinally and other immaterial changes incident to the increase of these wires. That the defendant has appropriated the essential features of the Gousset tray and those upon which its successful operation depends, there can be little doubt.

The patent to Walter is an exceedingly elaborate one and contains 18 claims, but the first claim only is involved and the structure therein described is not at all complicated or difficult to comprehend. The distinctive feature sought to be secured by this claim was the removal of a large number of coated creams—amounting to several hundred—in a series of rows, from the tray. With this object in view the patentee uses a tray, of the Gousset type, having an individual holding receptacle for each core and mounts the tray on pivots so that it may be turned over, after having a receiving plate of equal dimensions placed upon it, thus depositing the coated drops upon the plate. The first claim is as follows:

"In a machine of the character described, the receptacle to contain the coating substance, and the vertically movable tray reversibly mounted over said receptacle and adapted to hold the pieces to be coated, combined with means for raising and lowering said tray, substantially as and for the purposes set forth."

The defendant's tray is reversibly mounted precisely as in the Walter structure but it is moved laterally, on the jarring frame, to its pivoted supports before the reversing action takes place. In both machines the tray is reversed over the receptacle which contains the chocolate solution, and in both, the mechanisms which accomplish this result are integral parts of the machines.

It is thought, contrary to the impression formed at the argument, that the defendant's pivoted reversing apparatus does not cease to be part of this combination because of the change of position on the frame, for the reasons stated in considering the combination of the Holmes patent. The jarring frame is part of the combination and the reversing apparatus is part of the jarring frame.

These conclusions render it unnecessary to consider the effect of the licenses granted to the defendant under the Walter and Gousset patents.

The complainant is entitled to the usual decree for an injunction and an accounting.